## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **DONOVAN DELANEY,** | : | |
| | : | **C.A. No.:** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NEW CASTLE COUNTY,** *a Municipal* | : | |
| *Corporation,* | : | |
| **JOSEPH S. BLOCH,** *both in his* | : | |
| *individual and in his official capacities,* | : | |
| **JOHN TREADWELL,** *in his individual* | : | |
| *capacity only,*  **LAURA O'SULLIVAN,** *in* | : | |
| *her individual capacity only,* **MATTHEW** | : | |
| **ASTFALK,** *in his individual capacity only,* | : | **Trial by Jury Demanded** |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

## I.  NATURE OF THE CASE

1.     This is a case of continuing disability and race/color discrimination in employment, and continuing retaliation against Plaintiff Donovan Delaney, an African American New Castle County police officer who suffers from the disability of *Psuedofolliculitis Barbae*  (a skin condition that creates problems for one to shave one's beard), as well as race/color discrimination and retaliation in employment contract in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981, and the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983, retaliation for petitioning the government in violation of the Petitions Clause of the United States Constitution, and breach of contract relating to the Settlement Agreement between Plaintiff Donovan Delaney and Defendant New Castle County which was negotiated

1

before the Equal Employment Opportunity Commission ("EEOC").

## I.  JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* ["ADA"]; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. , as amended in 1991 ["Title VII"]; 42 U.S. §§1983 & 1981; 28 U.S.C. §§ 1331, 1337, 1343, 2201 & 2202; the Civil Rights Act of 1866, 42 U.S.C. §1981; the First and Fourteenth Amendments to the U.S. Constitution relating to race (African American), 42 U.S.C. §1983; and the Petitions Clause of the First Amendment.  The causes of action arise under the ADA, Title VII, the Civil Rights Act of 1866, the First and Fourteenth Amendment of the United States Constitution relating to race discrimination and the Petitions Clause of the First Amendment, 42 U.S.C. §§ 1981 & 1983; and Delaware's state breach of contract law.

3.      Pursuant to 28 U.S.C. §1367, this Court has Supplemental Jurisdiction for any and all State of Delaware Breach of Contract claims relating to the EEOC Settlement Agreement between Plaintiff Donovan Delaney and Defendant New Castle County.

4.      The claims arose in this judicial district.  Therefore, venue in this judicial district is proper under 42 U.S.C. § 2000e - 5(f)(3).

5.      All conditions precedent to Title VII jurisdiction have been complied with or have occurred.  On December 16, 2021, Plaintiff Donovan Delaney, within 300 days of the commission of any unlawful employment practice, filed a Charge of employment discrimination and retaliation in the terms and conditions of employment, based upon race and disability discrimination, with the Equal Employment Opportunity Commission.

6.      The discrimination against plaintiff Donovan Delaney also has been continuing.

On June 7, 2022 a Right to Sue Letter was issued from the EEOC on all charges, and it was received on or after June 7, 2022.

7.     This Lawsuit has been filed within 90 days or fewer from the date when Plaintiff Donovan Delaney received the Right to Sue Letter.

## II. *THE PARTIES*

8.     Plaintiff Donovan Delaney ("Plaintiff" "Plaintiff Delaney" or "Delaney") is a disabled, African-American employed by Defendant New Castle County from approximately June 18, 2001 to the present, initially as a Recruit Officer, then as a Cadet in the Academy in approximately January 2002, then as an Officer in approximately July 2002, then as an Officer First Class on or about June 18, 2005, then as a Corporal on or about June 18, 2014, then as a Master Corporal on or about June 18, 2016, then as a Sergeant on or about September 12, 2016, and then as a Senior Sergeant from approximately September 12, 2020 to the present.  Plaintiff was assigned the roles of a Drug Detective on or about April 6, 2009, uniform patrol on or about June 2016, and then special Operations Unit's Mobile Enforcement Team ("MET") West Supervisor on or about January 6, 2020.  On or about July 6, 2020, Plaintiff filed EEOC Charge of Discrimination No. 530-2020-02706 ("Initial EEOC Charge"), alleging disability and race discrimination and retaliation for Defendant's denial of Plaintiff's reasonable accommodation which it previously approved, harassment, and other disparate treatment of Plaintiff that forced Plaintiff out on medical/sick leave for stress for 9 weeks beginning February 21, 2020.  Plaintiff retained an  attorney and authorized him to send a demand letter on August 18, 2020, on Plaintiff's behalf to Defendant opposing the disability and race discrimination and retaliation. On January 13, 2021, a mediation was held, and a tentative settlement was reached.   After a 90

3

day trial period, a permanent Settlement Agreement and Release was signed by Plaintiff Delaney

on June 7, 2021, and Defendant NCC on June 25, 2021.  Thereafter, Defendant resumed

harassing Plaintiff, discriminating against Plaintiff in the terms and condition of Plaintiff's

employment, and breaking the terms of the settlement agreement as set forth in more detail

below.  On December 2, 2021, Defendant announced that Plaintiff would be transferred from the

MET West to a non-specialized, Patrol Unit effective January 10, 2022.

9.     Defendant New Castle County ("NCC") is a municipal corporation organized under

the laws of the State of Delaware.  Plaintiff Delaney is an employee of the New Castle Police

Department ("NCCPD"), a Division of NCC.

10.     Defendant Joseph S. Bloch ("Colonel," "Chief," "Bloch," or "Defendant Bloch") is

presently the colonel and the Chief of Police for the Police Department of NCC.  His residence is

located in Middletown, Delaware.  He is sued in both his individual and official capacities.

11.     Defendant Major John Treadwell ("Major," Treadwell," or "Defendant

Treadwell") is presently a Major of the NCCPD assigned as a director of Operations. He began

this assignment in August of 2021.  His residence is located in Clayton, Delaware.  He is sued in

his individual capacity only.

12.     Defendant Laura O'Sullivan ("Captain," "O'Sullivan," or "O'Sullivan") is

presently a Captain of the NCCPD.  During the applicable time for Plaintiff's Initial EEOC

Charge and up until the present she has been a Captain in charge of Special Operations Units

such as MET West, and Defendant Lieutenant Matthew Astfalk reported directly to her.  She was

named in Plaintiff's Initial EEOC Charge. Her residence is located in Wilmington, Delaware.

She is sued in her individual capacity only.

13.     Defendant Lieutenant Matthew Astfalk ("Lieutenant," Astfalk," or "Defendant Astfalk") is presently a Lieutenant of NCCPD.  He is sued in his individual capacity only. Although he was named in Plaintiff Delaney's Initial EEOC Charge, he was promoted from the Special Operations Unit to the prestigious role of "Chief Executive Officer/County Council Liason," the police secretary to Defendant Colonel Bloch.  Defendant Astfalk's  residence is located in Wilmington, Delaware.

### III.  FACTS GIVING RISE TO THE ACTION

14.     Defendant Colonel Bloch (as the head of the NCCPD)and Defendant Lieutenant Astfalk (as Colonel Bloch's Chief Executive Officer/County Council Liason) have input into and make all personnel, promotion, demotion, and transfer decisions for the NCCPD.  They and NCCPD have a policy, custom and practice of discriminating against African American and/or disabled officers in assignment decisions and in the terms and conditions of employment.

### A.   INITIAL  EEOC CHARGE

15.     On or about July 6, 2020, Plaintiff filed EEOC Charge of Discrimination No. 530-2020-02706 ("Initial EEOC Charge"), alleging disability and race discrimination and retaliation for Defendant's denial of Plaintiff's reasonable accommodation which it previously approved, harassment, and other disparate treatment of Plaintiff that forced Plaintiff out on medical/sick leave for stress for 9 weeks beginning February 21, 2020.  Plaintiff retained an attorney and authorized him to send a demand letter on August 18, 2020, on Plaintiff's behalf to Defendant opposing the disability and race discrimination and retaliation.  On January 13, 2021, a mediation was held, and a tentative settlement was reached.

16.     So while exhausting his administrative remedies at the EEOC, Defendant NCC

and Plaintiff Delaney negotiated a settlement agreement (hereinafter "EEOC Settlement Agreement") concerning his original EEOC Charge.

17.     After a 90 day trial period under a temporary agreement, the permanent EEOC Settlement Agreement was signed by Plaintiff Delaney and Defendant NCC on or about June 7, 2021.  It was signed by Defendant NCC on or about June 25, 2021.

18.     Unfortunately, shortly after Plaintiff Delaney agreed to the EEOC Settlement Agreement, Defendants began retaliating against him in the terms and conditions of his employment, and breaching the EEOC Settlement Agreement as set forth in more detail below. Defendants' treatment of him indicates an intent to punish him for engaging in protected activity and petitioning the government for a redress of grievances.

## B.   DISCRIMINATORY/RETALIATORY ACTIONS

19.     For example, on December 2, 2021, Defendant announced that Plaintiff would be transferred from the MET West Unit  to a non-specialized, Patrol Unit effective January 10, 2022.

20.     On January 31, 2021, at approximately 0710 hours, Plaintiff noticed that Defendant removed Plaintiff's name from his MET West mailbox in the bunker and placed Plaintiff's mail in an unlabelled mailbox with no name, directly underneath the mailboxes for Plaintiff's team, MET West.  On February 2, 2021, at approximately 1425 hours, Plaintiff's mailbox again was the only one without a name tag.  Plaintiff photographed the unlabelled mailbox on both occasions.

21.     At her request, Plaintiff provided Defendant Captain O'Sullivan on February 6, 2021, the list of the 4 MET officers in Plaintiff's unit, including himself, scheduled to assist with

6

the February 8, 2021 security detail for U.S. President Joseph R. Biden, Jr.  Also on February 6,

2021, approximately one hour later, Defendant  Lieutenant Matthew Astfalk responded on a

separate email thread to Defendant O'Sullivan but replaced Plaintiff with Detective Beinke.

22.     Then in violation of the EEOC Settlement Agreement reached to resolve the

initial EEOC Charge of Discrimination, Astfalk texted Plaintiff's personal cell phone (copying

O'Sullivan and Staff Sergeants Davis and Pierson), and told Plaintiff to inform his team Pierson

would email them their assignments, a task Plaintiff  himself already completed and provided to

O'Sullivan.  Again, in violation of the EEOC Settlement Agreement, Defendant Astfalk called

Plaintiff's personal cell phone at approximately 0739 hours, to ask about a non-urgent matter

involving Plaintiff Delaney's  people soft time sheet.

<u>**PERSONS IN AUTHORITY AWARE OF THE ACTIONS**</u>

23.     In response to an e-mail from Major Robert McLucas on February 17, 2021, at

approximately 1126 hours, seeking feedback on Plaintiff Delaney's transitioning back to his

MET West supervisory role, Plaintiff Delaney reported that Defendant Astfalk removed him

from the Presidential Detail without explanation, that Defendant Astfalk had provided short

notice and no updates on Plaintiff Delaney's team's assignments from Defendant Astfalk

regarding a SWAT hit on February 19, 2021 at 0500 hours after Plaintiff's team was scheduled to

end its prior shift at 2315 hours on February 18, 2021, and that Plaintiff still had not received a

mailbox with his name on it as of February 18, 2021, at 2100 hours.

24.     After Plaintiff reported the mailbox situation to Major McLucas several times, he

finally offered to personally replace Plaintiff's name tag on his mailbox.  On February 19, 2021,

at approximately 1423 hours, Major McLucas stated that he had investigated Plaintiff's other

concerns and that Defendant O'Sullivan already had assigned the Presidential Detail scheduling

to Defendant Astfalk, who allegedly removed Plaintiff because it did not require a supervisor.

However, Astfalk replaced Plaintiff Delaney with a detective who was compensated with

overtime pay when it would have been a part of Plaintiff's regular shift and regular pay.

Moreover, this same assignment previously had been worked by supervisors.  Additionally,

Defendant O'Sullivan did not have an issue originally when Plaintiff provided her the officers'

names for President Biden's detail, which included Plaintiff.  Defendant Astfalk also told Major

McLucas that Sergeant John-Paul Piser provided Plaintiff the details of the February 19th SWAT

operations.  However, Sergeant Piser told Plaintiff that he told Astfalk that he could not

remember telling Plaintiff about the assignment.

## C.   MORE DISCRIMINATORY/RETALIATORY
## ACTIONS & VIOLATIONS OF POLICIES

25.     On February 26, 2021, at 1400 hours at the bunker, Defendant Astfalk scolded

Plaintiff Delaney for counseling Officer Lech without consulting with Defendant Astfalt first

because Lech had a prior discipline for conduct toward the public.  However, Defendant Astfalk

had never informed Plaintiff of that previously.  On March 1, 2021, Major McLucas ordered

Plaintiff by e-mail to contact Defendant Astfalk before Plaintiff issued any discipline.

26.     Senior Sergeant Greg Meyer previously replaced Plaintiff Delaney when he was

forced out on stress leave (relating to his Initial EEOC Charge), and Plaintiff replaced him when

Plaintiff was reinstated to the MET after resolving his Initial EEOC Charge.  Departmental

policy requires the sergeant on scene or on duty Lieutenant to contact on-call supervisor for call

outs.  However, Sergeant Meyer instead ordered Master Corporal Moorhead to call Plaintiff

Delaney on March 23, 2021, at approximately 0401 hours, about an overdose case.  After

Sergeant Meyer told Moorhead he was trying to get her experience performing this duty, she

admitted to the rookie Officer this was not normal procedure.  At least twice, Meyer had another

officer call Plaintiff about an overdose instead of calling Plaintiff himself.  Previously, on March

12, 2021, Plaintiff tried to talk to Sergeant Meyer at the New Castle County Federal Credit when

Plaintiff saw him there leaving the teller window.  Sergeant Meyer looked at Plaintiff and said,

"not now Donovan, not now," and walked away.

27.     Defendant Astfalk did not provide Plaintiff his annual performance evaluation that

was due on February 18, 2021.  By September 2021, they completed the annual evaluations due

in 2021, for all of Plaintiff's similarly situated peers including Senior Sergeants Brian Cote,

Timothy Golden, Michael Bingnear, Brian Burke and John-Paul Piser.

28.     On June 1, 2021, at approximately 1426 hours, Defendant Astfalk called

Plaintiff's personal cell and denied him a vacation request, allegedly because Sergeant Piser

previously wrote his name in the calendar book.

29.     This contradicts the policy enacted by Defendant Astfalk wherein, by e-mail on

February 9, 2021, he required that vacation requests must be submitted electronically.

30.     Prior to properly submitting his electronic request, Plaintiff verified that Sergeant

Piser had not obtained electronic approval for the same vacation days Plaintiff was seeking: June

26th and 27th, 2021.

31.     Because Defendant Astfalk's message was not urgent, according to Plaintiff

Delaney's EEOC Settlement Agreement, he should have informed Plaintiff by email or through

Lieutenant Polk in accordance with the Agreement.  Instead, in violation of the EEOC Settlement

9

Agreement,Defendant Astfalk called Plaintiff's personal cell phone prior to the automated denial

by email, even though this was not an emergency or urgent matter.  Rather, it was approximately

three weeks before June 26th and 27th, 2021.

32.     In addition to violating Plaintiff's EEOC Settlement Agreement and his own

stated process, Defendant Astalk gave preferential treatment to Sergeant Piser (who merely

sought a regular day off because he had SWAT School the following week) over Plaintiff after

Plaintiff informed Defendant Astfalk that the reason for his request was that Plaintiff's daughter

was selected to play in an all-star game.

33.     Then, on July 2, 2021, Defendant Astfalk, allowed himself and Senior Sergeants

Burke and Bingnear off after Defendant Astfalk previously said Sergeant Burke and he would not

be off on the same dates and Burke and Bingnear could not be off on the same date if they were

working the same shift.

### D.   INVOLUNTARY TRANSFER/DEMOTION

34.     Announced on December 2, 2021, and effective January 10, 2022, at 0001 hours,

Defendant involuntarily transferred Plaintiff from his Specialized Operations Unit, Mobile

Enforcement Team (MET West) back to beat patrol (Patrol Squad D).  This constitutes a

demotion in that it limits Delaney's likelihood of promotion, overtime, and future transfers to any

other specialized unit.  The functions and duties of a Sergeant working in a Specialized Unit like

MET are different than the functions and duties of a Sergeant working in Patrol.

35.     Indeed, working with the highly regarding MET Unit was a plumb assignment as

compared to working uniform patrol.   MET deals specifically with crime stricken

neighborhoods.  While uniform patrol performs important duties, Sergeant Delaney's  MET

10

duties and responsibilities were more high risk.  For example, on the Mobile Enforcement Team, he would assist the SWAT team with executing warrants and provide support during kidnaping standoffs.  Its officers have an inside track on being pulled to help with crowd control for important personages who come to Delaware, like President Biden, and support the Riot Control Team if and when riots occur.   MET also handles drug search warrants and drug enforcement - an area Sergeant Delaney appreciates given his 8 ½ prior years of experience in drug enforcement, 5 ½ years of which were in conjunction with a DEA Task Force.  So generally speaking MET is a prestigious group which most officers aspire to more than working uniform patrol.

36.     In addition, while he worked normal hours for MET, he has now been assigned to overnight patrol - after over 21 years of working as a police officer for the NCCPD.

37.     Defendants then again replaced Plaintiff Delaney with Senior Sergeant Greg Meyer ("Meyer") by reassigning/promoting Sergeant Meyer from Patrol Squad C to MET West.

38.     Sergeant Meyer is a non-disabled, white Caucasian who has not filed an EEOC Charge or otherwise opposed workplace discrimination.

### E.  DEFENDANT'S AGENTS MAKING OR COMMUNICATING DISCRIMINATORY DECISIONS AND REASONS PROVIDED

39.     Regarding the involuntary transfer, on December 2, 2021 (effective January 10, 2022), Defendant Major Treadwell (a non-disabled, African American who never opposed workplace discrimination), in a phone call with Plaintiff initially claimed it was his decision and told Plaintiff he wanted some "new blood" on the MET.

40.     In reality, Defendants kept 3 Sergeants on the MET who were there longer than

Plaintiff Delaney: Sergeants Michael Bingnear, Timothy Golden, and Brian Cote.

41.     Contradicting his claim that he made the decisions, Defendant Major Treadwell indicated that it was not his decision to retain these 3 Sergeants, stating that if he was in charge, he would have moved them all out of the MET.

42.     Furthermore, Defendants replaced Plaintiff with a Sergeant (Mayer) who had performed the role when Plaintiff was forced out on administrative leave for stress (relating to his EEOC Charge) from approximately late November 2020 through January 2021.

43.     Promoted in August 2021, Defendant Treadwell told Plaintiff that if he had the choice, he would have kept both Plaintiff and Meyer on the MET when Plaintiff returned from administrative leave on January 26, 2021.

### F.   BASES AND STATUTES VIOLATED AND RATIONALE FOR CONCLUSION OF DISCRIMINATORY MOTIVATION

44.     The real reason for the involuntary transfer out of MET patrol, harassment, disparate treatment, and other discrimination in the terms and conditions of Plaintiff's employment is due to Plaintiff Delaney's race and/or disability, and/or retaliation for his Initial EEOC Charge, and otherwise opposing workplace discrimination by hiring a lawyer, sending a demand letter, reporting retaliation to Major McLucas on February 17, 2021, and agreeing to and signing an EEOC Settlement Agreement (collectively Plaintiff Delaney's "protected activity") in violation of the ADA and Title VII, disability discrimination in violation of the ADA, and race discrimination in violation of Title VII.

### G.   TEMPORAL PROXIMITY

45.     In retaliation for Plaintiff Delaney's protected activity and in violation of the

EEOC Settlement Agreement, Defendants retaliated against Plaintiff effective on January 31, 2021, just 18 days after the EEOC Settlement Agreement was reached at the EEOC mediation on January 13, 2021.  Defendant involuntarily transferred Plaintiff from the MET to uniform patrol duty at its earliest opportunity on December 2, 2021, less than 6 months after the EEOC Settlement Agreement was signed on June 25, 2021.

46.      Upon information and belief, Defendants decided to transfer Plaintiff as early as its Executive Retreat in November 2021, less than 5 months after the EEOC Settlement Agreement was signed.

## H.   DEMONSTRATED ANTAGONISM BETWEEN PROTECTED ACTIVITY AND INVOLUNTARY TRANSFER

47.      Defendants demonstrated antagonism concerning Plaintiff Delaney's protected activities.

## I.   DEFENDANTS' BREACHES OF THE SETTLEMENT AGREEMENT

48.      Pursuant to Plaintiff's EEOC Settlement Agreement, Lieutenant Polk (Commander Patrol Squad 3) was to act as Plaintiff's supervisor instead of Defendant Astfalk.

49.      However, on March 16, 2021 at approximately 1645 hours, in the small evidence room at Headquarters, Defendant Astfalk addressed with Officer Lech and Plaintiff a non-urgent counseling issue from February 16, 2021, case #32-21-11985.

50.      Defendant Astfalk did this rather than communicating it by e-mail or including Lieutenant Polk in the meeting.

51.      On October 1, 2021, Defendant transferred Polk to the Professional Standards Unit and did not provide another liaison for Plaintiff to communicate directly with for oral and

non-urgent communications instead of Plaintiff's harasser, Defendant Astfalk.

52.     As such, Defendants breached the January 26, 2021 Settlement Term Sheet at Section 1, paragraphs 1, 6, and 7; the June 30, 2021 Settlement Agreement and Release at Sections 4, paragraphs 1,3,4,5, and 7; EEOC's June 23, 2021 Mediation Settlement Agreement at section 4; and Defendant's policies against retaliation.

### J.   DEFENDANT'S POLICIES / PRACTICES NOT FOLLOWED

53.     As identified above, Defendants policies and/or practices and the EEOC Settlement Agreement were not followed by Defendants.

### K.   NON-DISABLED, CAUCASIAN REPLACEMENT
### DID NOT OPPOSE DISCRIMINATION

54.     Sergeant Meyer replaced Plaintiff on MET.

### L.  JOB TITLES AND EEO CATEGORIES OF COMPARATORS AND
### THE DIFFERENT TREATMENT EACH RECEIVED

55.     On December 2, 2021, Defendants did not transfer from Special Operations to an un-specialized patrol unit any of Plaintiff's similarly situated, non-disabled, Caucasian peer Sergeants who did not oppose workplace discrimination.  These included Sergeants Michael Bingnear, Timothy Golden, and Brian Cote who all remain on the MET.

56.     Meanwhile, Defendant assigned Caucasian John-Paul Piser to the Professional Development Unit, another prestigious, specialized unit to which Plaintiff desired to be transferred.

57.     The NCCPD now has no African American supervisors in its entire Special Operations Unit, despite the fact that there are 9 Supervisors/Lieutenants and 7

Supervisors/Sergeants in the Special Operations Unit.

### M.   FACTORS USUALLY/ALLEGEDLY CONSIDERED WERE IGNORED

58.     In November 2021, Astfalk said that officers with the most time in the Special Operations Unit had the potential to be transferred out.  Inconsistently,  Plaintiff had the least time in the Special Operations Unit, but Defendants transferred Plaintiff while retaining in Special Operations Michael Bingnear, Timothy Golden, and Brian Cote, all of whom have been there longer than Plaintiff.

59.     Of all the supervisors in the Special Operations Unit, Plaintiff possessed the most amount of drug experience: approximately 8 ½ years combined in the Drug Unit and on the DEA Task Force. Yet, Defendant ignored all of Plaintiff's relevant experience in transferring Plaintiff out of the unit and back to patrol.

60.     The average tenure for a supervisor in Special Operations is 4 to 5 years, but Plaintiff was there for less than 2 years.

### N.  DISTINCT LACK OF WRITTEN PERFORMANCE CRITICISM

61.     Previously for 2003, Plaintiff Delaney earned Kiwanis Officer of the 3rd Quarter and Kiwanis Officer of the Year.

62.     Indeed, Plaintiff Delaney earned his step and grade pay raise in July 2021.

63.     There is a distinct lack of written criticism of Plaintiff's work performance.

64.     Indeed,  Plaintiff Delaney was told by Defendant Major Treadwell that his transfer from MET West to Patrol Squad D had nothing to do with his performance while working for MET West.

## O.   DECISION MAKER'S AWARENESS OF PLAINTIFF'S PRIOR

## PROTECTED ACTIVITY

65.     Effective October 1, 2021, then Captain Joseph Bloch, a non-disabled Caucasian who never opposed discrimination, replaced African American Vaughn Bond, Jr. as the Colonel/Chief of the NCCPD.

66.     Previously, Defendant Bloch was one of the 2 Medical Liaisons who received Plaintiff's medical records and forms when Plaintiff went on administrative leave for stress due to the harassment that led to the initial charge.

67.     Effective January 10, 2022, Defendant Colonel Bloch also transferred Plaintiff's harrasser, Defendant Astfalk, from Special Operations Unit to the prestigious role of the Chief Executive Officer / County Council Liaison, the police secretary to new Colonel Bloch.

## P.   REPEATED & RETALIATORY PSYCHOLOGICAL EXAMS

68.     After Plaintiff filed his Initial EEOC Charge on July 6, 2020, Defendants, on or about August 14, 2020, required Plaintiff to get an unnecessary, psychological evaluation and medical clearance before returning from FMLA leave.  (Plaintiff Delaney was caring for his  ill wife on approved FMLA during the period from June 3, 2020 to August 16, 2020).

69.     After Plaintiff needed to take time off from work due to the emotional pain and suffering he was suffering as a result of Defendants' actions, Plaintiff received clearance from his therapist and his physician as of June 28, 2022.

70.     Defendants required Plaintiff to submit to multiple fitness for duty examinations. As a result, for over two months Plaintiff has not been allowed to return to duty (as a patrol officer as opposed to an MET officer), and still has not returned to duty as of August 31, 2022.

16

As a result, he unjustly had to exhaust over two months of sick/vacation leave.

### IV.  *ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT*

71.    At all times material hereto each of the individual Defendants participated in, authorized, ratified and sanctioned the discriminatory and retaliatory deprivations described above which illegally denied promotions, discriminated in terms and conditions of employment, retaliated for protected speech and petition, for filing a Title VII charge or opposing practices made illegal by statutes and the Fourteenth Amendment to the United States Constitution, and otherwise harassed plaintiffs.

72.    At all times material hereto the individual Defendants were acting under color of law.  The constitutional deprivations described herein are fairly attributable to the State.

73.    The actions of the Defendants were deliberately, intentionally, willfully, purposefully and knowingly done in violation of federally protected rights and because of the exercise of those rights.  The Defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal rights.  Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.  Their actions were wanton and malicious or taken with reckless indifference to federally protected rights.  The exercise of statutory and constitutional rights made a difference in all actions adverse to plaintiffs.  The exercise of statutory and constitutional rights was a motivating or determinative factor in all actions adverse to Plaintiff.

74.    The Defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

75.    The individual Defendants' actions violated clearly established constitutional rights

of which any official would have known.

76.   The Defendants' actions were motivated by bias, bad faith, and improper motive.

77.   The Defendants' actions constitute an abuse of governmental power.

78.   The Defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

79.   The Defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

80.   By the actions of individuals acting at the policy making level the Defendant NCC by its policy, practice or custom has illegally denied promotions, discriminated in terms and conditions of employment, retaliated for protected petition, for filing a Title VII charge or otherwise opposing practices made illegal by statutes and the Fourteenth Amendment to the United States Constitution, and otherwise harassed Plaintiff.

81.   The actions of the Defendants were taken pursuant to Defendant NCC policies, customs and/or practices and were authorized, sanctioned, implemented, permitted and ratified by officials functioning at a policy making level.

82.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered emotional pain and suffering, mental anguish, along with loss of sick and/or vacation leave,  loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted, loss of the opportunity to be transferred to a Specialized Unit, and humiliation, embarrassment, and injury to reputation, and other non-pecuniary injury.

## COUNT I (TITLE VII RACE DISCRIMINATION)

83.     Plaintiff repeats and realleges paragraphs 1 - 82 set out above.

84.     Plaintiff is an African American.

85.     Plaintiff has suffered adverse actions in the terms and conditions of his employment.

86.     There is a causal link between these adverse actions and the fact that Plaintiff is an African American.

87.     Any alleged legitimate non-discriminatory reason offered by Defendants for its actions is a pretext for intentional retaliatory discrimination.

88.     Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

89.     Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

90.     The motivating or determinative reason for its treatment of Plaintiff Delaney was discrimination because of his race/color.

91.     Defendants' adverse treatment towards Plaintiff Delaney was temporally and

causally related to his protected status.

92.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, emotional pain and suffering, along with loss of sick and/or vacation leave, loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted,  loss of the opportunity to be transferred to a Specialized Unit, and humiliation, embarrassment, and injury to reputation.

93.    Plaintiffs' statutory right to be free of racial/color discrimination under Title VII has been denied.

### COUNT II (ADA *Pseudofolliculitis Barbae* Discrimination)

94.    Plaintiff repeats and realleges paragraphs 1 - 93 set out above.

95.    Plaintiff has *Psuedofolliculitis Barbae,* which constitutes a disability under the ADA.

96.    As a result of this condition, he cannot shave his beard.   The NCCPD has a general policy requiring its police officers to shave their beards.  Defendants held an animus against Plaintiff because he would not shave his beard.

97.    As a result of said animus, Plaintiff suffered adverse action in the terms and conditions of his employment.

98.    There is a causal link between these adverse actions and the fact that Plaintiff is an African American.

99.    Any alleged nondiscriminatory  reasons for the treatment of Plaintiff Delaney are a pretext and a cover-up  for discrimination.

100.    The motivating or determinative reason for its treatment of Plaintiff Delaney was

discrimination because of his disability.

101.    Any alleged legitimate non-discriminatory reason offered by Defendants for its actions is a pretext for intentional retaliatory discrimination.

102.    Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

103.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

104.    Defendants' adverse treatment towards Plaintiff Delaney was temporally and causally related to his protected status.

105.    Plaintiff's statutory right to be free from discrimination based on disability pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, has been denied.

106.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, emotional pain and suffering, along with loss of sick and/or vacation leave, loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted, loss of the opportunity to be transferred to a Specialized Unit, and humiliation, embarrassment, and injury to reputation.

## COUNT III (RETALIATION Under TITLE VII)

107.    Plaintiff repeats and realleges paragraphs 1 - 106 set out above.

108.    Plaintiff engaged in a protected activity under Title VII's race/color discrimination provisions by filing his Initial EEOC Charge on July 6, 2021, hiring an attorney to represent him concerning his EEOC Charge, having said attorney send a Demand Letter to Defendants, agreeing to a settlement relating to his Initial EEOC Charge, and signing an EEOC Settlement Agreement.

109.    There is a temporal nexus between the engagement in protected activity and the adverse employment actions taken against Plaintiff as a result of Plaintiff's protected activity.

110.    Any alleged legitimate non-discriminatory reason offered by Defendants for its actions is a pretext for intentional retaliatory discrimination.

111.    Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

112.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

113.    Plaintiff's statutory right to be free of retaliatory discrimination has been denied

under Title VII.

114.    Defendants' actions were wilful and wanton and taken with a reckless disregard for Plaintiff's civil rights.

115.    Plaintiffs' statutory right to be free of retaliation for engaging in protected activity related to racial/color discrimination under Title VII has been denied.

116.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, emotional pain and suffering, along with loss of sick and/or vacation leave, loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted,  loss of the opportunity to be transferred to a Specialized Unit, and humiliation, embarrassment, and injury to reputation.

## COUNT IV (RETALIATION, Under the ADA)

117.    Plaintiff repeats and realleges paragraphs 1 - 116 set out above.

118.    Plaintiff engaged in a protected activity under the ADA's disability discrimination provisions by filing his Initial EEOC Charge on July 6, 2021, hiring an attorney to represent him concerning his EEOC Charge, having said attorney send a Demand Letter to Defendants, agreeing to a settlement relating to his Initial EEOC Charge, and signing an EEOC Settlement Agreement.

119.    There is a temporal nexus between the engagement in protected activity and the adverse employment actions taken against Plaintiff as a result of Plaintiff's protected activity.

120.    Any alleged legitimate non-discriminatory reason offered by Defendants for its actions is a pretext for intentional retaliatory discrimination.

121.    Plaintiff can demonstrate pretext because any legitimate non-discriminatory

reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

122.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

123.    Plaintiff's statutory right to be free of retaliatory discrimination has been denied under Title VII.

124.    Defendants' actions were wilful and wanton and taken with a reckless disregard for Plaintiff's civil rights.

125.    Plaintiffs' statutory right to be free of retaliation for engaging in protected activity related to disability discrimination under the ADA, 42 U.S.C. § 12101, *et seq.,* has been denied.

126.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, emotional pain and suffering, along with loss of sick and/or vacation leave, loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted, loss of the opportunity to be transferred to a Specialized Unit, and humiliation, embarrassment, and injury to reputation.

## COUNT V (RACE DISCRIMINATION IN EMPLOYMENT CONTRACT Under § 1981)

127.    Plaintiff repeats and realleges paragraphs 1 - 126 set out above.

128.    Under all the circumstances, Plaintiff has been illegally discriminated against in terms and conditions of his employment contract with Defendants because of his race/color.

129.    Plaintiff is a black African American.

130.    Plaintiff has suffered adverse actions in the terms and conditions of his employment as a result of Defendants' actions.

131.    There is a causal link between these adverse actions and the fact that Plaintiff is a black African American.

132.    Any alleged legitimate non-discriminatory reason offered by Defendants for its actions is a pretext for intentional retaliatory discrimination.

133.    Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

134.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

135.    The motivating or determinative reason for its treatment of Plaintiff Delaney was discrimination because of his race/color.

136.    Defendants' adverse treatment towards Plaintiff Delaney was temporally and

causally related to his protected status.

137.    Plaintiffs' statutory right to be free of racial/color discrimination in employment

constracts has been denied under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

138.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has

suffered a demotion, emotional pain and suffering, along with loss of sick and/or vacation leave,

loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the

fact that it is unlikely that he will be promoted, loss of the opportunity to be transferred to a

Specialized Unit, and humiliation, embarrassment, and injury to reputation.

### COUNT VI (RACE DISCRIMINATION IN EMPLOYMENT Under § 1983)

139.    Plaintiff repeats and realleges paragraphs 1 - 138 set out above.

140.    Under all the circumstances, in violation of the Equal Protection Clause of the

Fourteenth Amendment of the United States Constitution, Plaintiff has been illegally

discriminated against in terms and conditions of employment which was created, approved and

tolerated by management because of his race/color.

141.    Plaintiff is a black African American.

142.    Plaintiff has suffered adverse actions in the terms and conditions of his

employment as a result of Defendants' actions.

143.    There is a causal link between these adverse actions and the fact that Plaintiff is a

black African American.

144.    Any alleged legitimate non-discriminatory reason offered by Defendants for its

actions is a pretext for intentional retaliatory discrimination.

145.    Plaintiff can demonstrate pretext because any legitimate non-discriminatory

reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

146.   Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

147.   The motivating or determinative reason for its treatment of Plaintiff Delaney was discrimination because of his race/color.

148.   Defendants' adverse treatment towards Plaintiff Delaney was temporally and causally related to his protected status.

149.   Plaintiffs' statutory right to be free of racial/color discrimination in employment constracts has been denied under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

150.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, emotional pain and suffering, along with loss of sick and/or vacation leave, loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted, loss of the opportunity to be transferred to a Specialized Unit, and humiliation, embarrassment, and injury to reputation.

## COUNT VII (RETALIATION Under §1981)

151.   Plaintiff repeats and realleges paragraphs 1 - 150 set out above.

27

152.    Plaintiff engaged in a protected activity under the Civil Rights Act of 1866 race/color discrimination provisions by filing his Initial EEOC Charge on July 6, 2021, hiring an attorney to represent him concerning his EEOC Charge, having said attorney send a Demand Letter to Defendants, agreeing to a settlement relating to his Initial EEOC Charge, and signing an EEOC Settlement Agreement.

153.    There is a temporal nexus between the engagement in protected activity and the adverse employment actions taken against Plaintiff as a result of Plaintiff's protected activity.

154.    Any alleged legitimate non-discriminatory reason offered by Defendants for its actions is a pretext for intentional retaliatory discrimination.

155.    Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

156.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

157.    Defendants' actions were wilful and wanton and taken with a reckless disregard for Plaintiff's civil rights.

158.    Plaintiffs' statutory right to be free of retaliation for engaging in protected activity

28

related to racial/color discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981 has been denied.

159.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, emotional pain and suffering, along with loss of sick and/or vacation leave, loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted, loss of the opportunity to be transferred to a Specialized Unit, and humiliation, embarrassment, and injury to reputation.

### COUNT VIII (FOURTEENTH AMENDMENT RETALIATION Under §1983)

160.    Plaintiff repeats and realleges paragraphs 1 - 159 set out above.

161.    Under all the circumstances, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, Plaintiff has been illegally retaliated against in terms and conditions of employment which was created, approved and tolerated by management because of his race/color.

162.    Plaintiff engaged in a protected activity relating to his race/color under the Fourteenth Amendment via 42 U.S.C. §1983 by filing his Initial EEOC Charge on July 6, 2021, hiring an attorney to represent him concerning his EEOC Charge, having said attorney send a Demand Letter to Defendants, agreeing to a settlement relating to his Initial EEOC Charge, and signing an EEOC Settlement Agreement.

163.    There is a temporal nexus between the engagement in protected activity and the adverse employment actions taken against Plaintiff as a result of Plaintiff's protected activity.

164.    Any alleged legitimate non-discriminatory reason offered by Defendants for its actions is a pretext for intentional retaliatory discrimination.

165.    Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

166.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

167.    Plaintiff's statutory right to be free of retaliatory discrimination has been denied under Title VII.

168.    Defendants' actions were wilful and wanton and taken with a reckless disregard for Plaintiff's civil rights.

169.    Plaintiffs' right to be free of retaliation for engaging in protected activity related to racial/color discrimination under the Fourteenth Amendment via 42 U.S.C. §1983 has been denied.

170.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, emotional pain and suffering, along with loss of sick and/or vacation leave, loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted, a loss of the opportunity to be transferred to a Specialized Unit, and humiliation, embarrassment, and injury to reputation.

## COUNT IX (FIRST AMENDMENT PETITIONS CLAUSE)

171.    Plaintiff repeats and realleges paragraphs 1- 170 set out above.

172.    The Defendants took action adverse towards Plaintiff as a direct and proximate result of and in retaliation for Plaintiff's petitioning of the government for a redress of grievances by filing an EEOC Charge of Discrimination on July 6, 2020, agreeing to a settlement relating to said Petition, and signing an EEOC Settlement Agreement relating to said Petition.

173.    There is a temporal and causal relationship between Plaintiff's aforementioned Petitions and the adverse action taken against Plaintiff.

174.    Defendants have displayed animosity towards Plaintiff for Petitioning the government for a redress of grievances.

175.    Plaintiff's First Amendment protected activity was a substantial or motivating factor in the adverse employment action.

176.    The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have taken adverse action against Plaintiff.

177.    As a direct and proximate result of the actions of the defendants as detailed herein, Plaintiff has suffered and is suffering diminished earning capacity now and in the future, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain, suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury.

178.    Plaintiff's constitutional right to petition the government has been denied under the Petitions Clause of the First Amendment of U.S. Constitution and 42 U.S.C. § 1983.

179.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, emotional pain and suffering, mental anguish, along with loss of sick and/or vacation leave,  loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted, a loss of the opportunity to be transferred to a Specialized Unit, other pecuniary losses, and humiliation, embarrassment, and injury to reputation, and other non-pecuniary losses and injury.

### COUNT X (BREACH OF CONTRACT - EEOC SETTLEMENT AGREEMENT)

180.    Plaintiff repeats and realleges paragraphs 1 - 179 set out above.

180.    Defendant NCC, by the actions of the individual Defendants acting within the scope of their employment, violating the aforementioned provisions of the EEOC Settlement Agreement, thus breaching said contract between Plaintiff and Defendant NCC.

181.    Defendant NCC failed to perform the EEOC Settlement Agreement in good faith.

182.    The provisions which were violated were materially important to Plaintiff and materially caused Plaintiff to sign the EEOC Settlement Agreement.

183.    Plaintiff has suffered economic injury as a result of said breach.

184    Plaintiff is entitled to compensatory and incidental damages as a result of said breach.

185.    As a direct and proximate result of Defendants' actions, Plaintiff Delaney has suffered a demotion, along with loss of sick and/or vacation leave,  loss of past and future wages, back pay, overtime and benefits, loss or earning capacity due to the fact that it is unlikely that he will be promoted, a loss of the opportunity to be transferred to a Specialized Unit, and other pecuniary losses.

32

186.    Under the circumstances, this Court should issue mandatory injunction(s) requiring Defendant NCC to transfer Plaintiff back to the MET.

**WHEREFORE,** Plaintiffs Delaney prays that this Court:

(a)    Enter judgment against the Defendants, jointly and severally.

(b)    Enter a declaratory judgment declaring the acts of the Defendants to be a violation of Plaintiffs' statutory and  Constitutional rights.

( c)    Enter a judgment against the Defendants, jointly and severally, for nominal or presumed damages.

(d)    Under Title VII and/or the ADA enter a judgment against the Defendant New Castle County for compensatory damages, including lost past and future wages, back pay, overtime and benefits, and future or front pay, loss of earning capacity, and humiliation, embarrassment and injury to reputation and personal injuries (including but not limited to emotional pain and suffering).

(e)    Under 42 U.S.C. §§ 1981 and 1983 enter a judgment against all Four Individual Defendants, jointly and severally, for compensatory damages, including lost past and future wages, back pay, overtime and benefits, and future or front pay, loss or earning capacity, and humiliation, embarrassment, injury to reputation and personal injuries (including but not limited to emotional pain and suffering).

(f)    Under 42 U.S.C. §§ 1981 and 1983, enter a judgment against the Four Individual Defendants, jointly and severally, for punitive damages.

(g)    Pursuant to Defendant NCC's breach of the EEOC Settlement Agreement, enter a Judgment against Defendant New Castle County for breach of the EEOC Settlement Agreement

33

and awarding him compensatory, incidental, and economic damages, along with attorney's fees and costs.

(g)      Award Plaintiff Delaney costs, pre- and post judgment interest, and attorneys' fees for this lawsuit.

(h)      Issue a mandatory injunction directing the Defendants to transfer Plaintiff Delaney out of Patrol and reinstate Plaintiff Delaney to the Specialized Operations Unit, MET West from Patrol Squad D.

(i)      Alternatively, issue a mandatory injunction requiring the Defendants to place Plaintiff in the next non-patrol vacancy to which he normally would have been entitled, subject to his approval of said transfer.

(j)      Award front pay until Plaintiff Delaney can be reinstated or placed in a comparable or appropriate position.

(k)  Issue a permanent injunction enjoining the Defendants from in the future discriminating against African-American officers in promotions to lieutenant and above, from discriminating against African-American officers in terms and conditions of employment, and requiring appropriate reporting to the court or a federal monitor of steps taken to eliminate past or future discrimination.

(l)      Issue a permanent injunction requiring the Defendants to:

(i)      Notify everyone who learned of Defendants' treatment of Plaintiff Delaney that their conduct was illegal,

(ii)      Expunge Plaintiff's personnel files of any derogatory information relating to this matter,

(m)     Require such other and further relief as the Court deems just and proper under the circumstances.

MARTIN D. HAVERLY, ATTORNEY AT LAW

 /s/ Martin D. Haverly
MARTIN D. HAVERLY, ESQUIRE (DE Bar No. 3295)
Brandywood Plaza
2500 Grubb Road, Suite 240-B
Wilmington, Delaware 19810
(302) 529-0121
Martin@HaverlyLaw.com

*Attorney for Plaintiff Donovan Delaney*

Dated: September 1, 2022